UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

EARL OTIS                                    CIVIL ACTION NO. 6:17-cv-01290

VERSUS                                       JUDGE JAMES

U.S. COMMISSIONER,                           MAGISTRATE JUDGE HANNA
SOCIAL SECURITY
ADMINISTRATION

## REPORT  AND  RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of nondisability.

Considering the administrative record, the briefs of the parties, and the applicable

law, it is recommended that the Commissioner's decision be affirmed.

## Administrative  Proceedings

The claimant, Earl Otis, fully exhausted his administrative remedies before

filing this action.  He applied for supplemental security income benefits ("SSI"),

alleging disability beginning on January 1, 1989.[1]  His application was denied.[2]  He

then requested a hearing, which was held on June 22, 2016 before Administrative

Law Judge Christine Hilleren.[3]  The ALJ issued a decision on August 24, 2016,

---

[1]     Rec. Doc. 7-1 at 150.   At the hearing, the alleged disability onset date was amended to
October 22, 2014.  Rec. Doc. 7-1 at 44.

[2]     Rec. Doc. 7-1 at 95.

[3]     Rec. Doc. 7-1 at 38-65.

concluding that the claimant was not disabled within the meaning of the Social Security Act from October 22, 2014 forward.[4]  The claimant asked for review of the decision, but the Appeals Council found that no basis existed for review of the ALJ's decision.[5]    Therefore,  the  ALJ's  decision  became  the  final  decision  of  the Commissioner for the purpose of the Court's review pursuant to 42 U.S.C. § 405(g). The claimant then filed this action seeking review of the Commissioner's decision.

## Summary of Pertinent Facts

The claimant was born on August 27, 1963.[6]  At the time of the ALJ's decision, he was a few days shy of his fifty-third birthday.  He has a ninth grade education[7] and no relevant work experience.[8]  He does not have a birth certificate and consequently has been unable to obtain a driver's license.[9]  He received Social Security benefits for several years, but lost his benefits when he was incarcerated from 2008 to 2011.[10]  He subsequently filed an application for SSI, which was denied

---

[4]      Rec. Doc. 7-1 at 23-34.

[5]      Rec. Doc. 7-1 at 4.

[6]      Rec. Doc. 7-1 at 45.

[7]      Rec. Doc. 7-1 at 48.

[8]      Rec. Doc. 7-1 at 48, 49, 166, 176.

[9]      Rec. Doc. 7-1 at 46-47.

[10]     Rec. Doc. 7-1 at 47, 49.

on June 8, 2012.[11]  He then filed the application that is under consideration at this time, and alleged that he is disabled due to foot drop, pins in his elbow, diabetes, high cholesterol, and high blood pressure.[12]

The record established that the claimant's elbow was injured in a fight in 1989 and was surgically reconstructed.[13]  The claimant was stabbed in the right leg and underwent surgery in approximately 1994,[14] which allegedly resulted in a foot drop condition.  An x-ray of the claimant's right leg from University Medical Center in Lafayette, Louisiana, dated June 23, 1995,[15] showed some calcification between the proximal fibula and tibia as well as an area of exostosis, i.e., benign outgrowth of cartilaginous tissue, along the proximal lateral tibia.  Additionally, there may have been some generalized sclerosis or hardening involving the proximal tibia and irregularity along the lateral aspect of the proximal tibia.  A bone scan was recommended.

The claimant was seen at the emergency room of Franklin Foundation Hospital in Franklin, Louisiana, on August 11, 2013 for complaints of flank pain,

---

[11]    Rec. Doc. 7-1 at 69-77.

[12]    Rec. Doc. 7-1 at 87, 166.

[13]    Rec. Doc. 7-1 at 50, 187.

[14]    Rec. Doc. 7-1 at 48, 187, 359.

[15]    Rec. Doc. 7-1 at 224.

nausea, and vomiting.[16]  It was noted that he had diabetes, gastroesophageal reflux, right foot drop, and a history of surgery to his elbow, foot, and neck.  He was diagnosed with a urinary tract infection and prescribed Cipro and Tramadol.  It was recommended that he follow up with his regular doctor.

On August 23, 2013, the claimant was seen by Nurse Practitioner Rachel Prusak at the Teche Action Clinic in Franklin, Louisiana with complaints of neck pain, right leg pain, and abdominal pain.[17]  He had a history of tuberculosis in the 1980s, type II diabetes, and high blood pressure.  It was noted that he was a cigarette smoker and a daily drinker.  He had a history of not taking his medication as prescribed.  His A1C was 9.6.  It was noted that he had leg pain from a past stab wound that left him with chronic pain, but he took no pain medication.  His problem list included diabetes mellitus type II without complications, benign essential hypertension, pain in multiple sites, osteoarthrosis in multiple sites, abdominal pain, alcohol dependence syndrome, and viral hepatitis.  It was noted that his judgment was mildly impaired.  He was prescribed Lisinopril and Metformin.

The claimant returned to the Teche Action Clinic on August 29, 2013.[18]  He was referred to the radiology department at Leonard Chabert Medical Center in

---

[16]     Rec. Doc. 7-1 at 345-350.

[17]     Rec. Doc. 7-1 at 253-262.

[18]     Rec. Doc. 7-1 at 263-265.

Houma, Louisiana, for an abdominal ultrasound.  The abdominal ultrasound study, obtained on September 16, 2013, was essentially negative.[19]

The claimant was again seen at the Teche Action Clinic on October 12, 2013.[20] Due to continued abdominal pain, he was referred to the radiology department at Leonard Chabert Medical Center for a CT scan of his abdomen.

The claimant returned to the Teche Action Clinic on December 23, 2013[21] for medication refills.  He also complained of chronic right leg pain that he rated at seven to eight on a scale of one to ten.  He gave a history of having been stabbed in the right leg in 1993, with the leg becoming gangrenous and requiring surgery.  He described the pain as constant and throbbing, explained that over-the-counter pain killers were ineffective, and stated that he drank a fifth of vodka per day to kill the pain.  It was noted that he had an abnormal abdominal CT scan in September and was referred to a gastroenterologist at Chabert Medical Center.  The claimant admitted, however, that he did not keep the appointment.  An old scar on his right lower extremity was noted but his gait was normal.  Palpation of his right leg showed mild tenderness but a normal range of motion and no joint instability as well as normal tone, bulk, and strength.  He was advised to rest and use ice, analgesics, and

---

[19]     Rec. Doc. 7-1 at 230-231.

[20]     Rec. Doc. 7-1 at 266-274.

[21]     Rec. Doc. 7-1 at 275-287.

elevation for the leg pain.  He was instructed to avoid heavy lifting and impact exercise.  His Lisinopril and Metformin prescriptions were refilled and alcohol cessation was discussed.  He was given a Toradol injection for the acute pain.  He was again referred to a gastroenterologist.

The claimant followed up at the Teche Action Clinic on January 6, 2014.[22] He indicated that he still smoked and still drank a fifth of vodka per day.  The importance of alcohol cessation was discussed.  He had joint pain and stiffness in his right leg and complained of right leg pain that he rated at seven to eight.  His gait was described as normal.  He was prescribed Drisdol, Lipitor, Lisinopril, and Lopid.

Various laboratory tests were performed at Chabert Hospital on January 20, 2014.[23]  An abdominal CT scan with contrast showed diffuse fibrofatty changes throughout the liver, atherosclerotic calcifications in the abdominal aorta and its branch vessels, and calcifications in the prostate gland.

On February 27, 2014, the claimant saw nurse practitioner Windy Adams at the gastroenterology clinic at Chabert Medical Center in Houma, Louisiana.[24]  The treatment noted stated that the claimant was referred to the clinic for Hepatitis C but it was noted that he did not have that disease.  He gave a history of hypertension,

---

[22]    Rec. Doc. 7-1 at 288-292.

[23]    Rec. Doc. 7-1 at 232-238.

[24]    Rec. Doc. 7-1 at 248-249.

diabetes, foot drop, right leg surgery, elbow surgery, and neck cyst surgery.  He reported smoking two to three packs of cigarettes per day, drinking a gallon of vodka per day, and using crack.  He smelled of alcohol and admitted that he had been drinking.  He was strongly encouraged to stop drinking, and the risks of cirrhosis were explained.

The claimant followed up at the Teche Action Clinic on April 3, 2014 and saw nurse practitioner Alise Hall.[25]  It was noted that he had a history of type II diabetes, osteoarthritis, alcohol dependence, and viral hepatitis.  He reported continuing to smoke and drink, and he admitted not taking his Metformin and Lopid as prescribed. He denied any particular complaints and denied being in pain.  His Drisdol, Lipitor, Lopid, and Metformin were refilled, and the dosage of Lisinopril was increased.  The diagnoses assigned were diabetes mellitus type II without complications, benign essential hypertension, alcohol dependence syndrome, and nondependent tobacco use disorder.  Alcohol and smoking cessation were discussed as was medication compliance.

The claimant returned to the Teche Action Clinic on July 10, 2014[26] for a follow up visit.  He reported that he had not been taking his medications as prescribed due to an inability to afford them.  His medications were changed so that

---

[25]     Rec. Doc. 7-1 at 293-297.

[26]     Rec. Doc. 7-1 at 298-301.

he could qualify for financial assistance.  He reported that he was still drinking but further stated that his problems had improved since his last visit and did not affect his normal activities.  His gait was described as normal and he reported no joint or muscular pain.  He was prescribed Benicar and Januvia.  Smoking and alcohol cessation were discussed.

The claimant again followed up at the Teche Action Clinic on July 25, 2014.[27] He reported that he had not taken any medication since the first of the year because he was awaiting financial assistance.  He complained of neck pain but examination of his neck was negative.  He reported pain in his neck and legs upon awakening that he rated at seven to eight on a ten-point scale.  His gait was normal and he had no tenderness on palpation to his spine.  There is no indication that his arms or legs were examined.  He was counseled to stop smoking, stop drinking, and take his medication as prescribed.  His Lisinopril, Levitra, and Metformin prescriptions were refilled.  He was also prescribed Gabapentin for pain.

On August 18, 2014, the claimant was seen at the emergency room at Franklin Foundation Hospital.[28]  He was described as a poor historian.  He complained of abdominal pain with vomiting and reported that he drank a pint of whiskey per day. He also reported that he was scheduled to see a "stomach doctor."  An ultrasound

---

[27]     Rec. Doc. 7-1 at 302-305.

[28]     Rec. Doc. 7-1 at 351-358.

examination of his abdomen showed diffuse fatty infiltration of the liver and a small amount of echogenic material in the gall bladder consistent with sludge. He was diagnosed with acute pancreatitis and prescribed Dilaudid for pain and Zofran for nausea and vomiting. He was discharged with instructions to rest and eat only clear liquids for one to two days and to stop alcohol completely.

The claimant saw nurse practitioner Windy M. Adams at Chabert Hospital on August 25, 2014[29] with regard to elevated hepatic enzymes, which were being monitored for cirrhosis. The assessments were elevated liver function tests and alcohol abuse. Nurse Adams encouraged the claimant to lose weight and stop drinking.

The claimant returned to the Teche Action Clinic the next day, August 26, 2014,[30] requesting refills of his medications. He reported that he had stopped drinking. His gait was described as normal, and he denied being in pain. His medications were Diclofenac, Lovastatin, and Metformin.

On September 14, 2014, the claimant had a right upper abdominal ultrasound scan performed at Chabert Hospital, which showed a fatty liver.[31]

---

[29]    Rec. Doc. 7-1 at 239-244.

[30]    Rec. Doc. 7-1 at 306-309.

[31]    Rec. Doc. 7-1 at 245-246.

The claimant again saw Nurse Hall at the Teche Action Clinic on September 24, 2014.[32]  He reported being 37 days sober.  His gait was normal, and he denied being in pain.

The claimant was seen at the Teche Action Clinic on October 28, 2014[33] for a spider bite.  Examination showed three painful abscesses for which antibiotics were prescribed.

The claimant returned to the Teche Action Clinic on December 19, 2014.[34] His diagnoses were Type II diabetes mellitus, benign essential hypertension, and hyperlipidemia.  His prescribed medications were Diclofenac Sod Ec, Gabapentin, and Lovastatin.

On January 6, 2015, the claimant was again seen at the Teche Action Clinic for a routine health check and medication refills.[35]  He complained about neck pain and right leg pain.  He stated that he had tried several different medications for pain but nothing really worked.  He also reported sexual dysfunction when taking his medication.   He was educated on the effects of hypertension and diabetes on impotence.  The claimant reported that he had been sober for four and a half months

---

[32]     Rec. Doc. 7-1 at 310-314.

[33]     Rec. Doc. 7-1 at 315-319.

[34]     Rec. Doc. 7-1 at 320-323.

[35]     Rec. Doc. 7-1 at 324-328.

but was smoking marijuana daily. His gait was described as normal, his right leg had no joint instability, and motor examination showed normal tone, bulk, and strength. He had a full range of motion and no tenderness to palpation in his neck. However, cervicalgia was added to his list of diagnoses and he was referred for a cervical spine x-ray. Nondependent cannabis abuse was also added to his diagnoses. He was prescribed Mobic for pain and Viagra.

On June 22, 2016, the claimant testified at a hearing regarding his symptoms and his medical treatment.[36] He explained that he has had a drop foot condition since February 1994, which prevents him from being able to stand up for very long and is getting worse. He stated that he can stand for only about thirty minutes per day. He testified that he had not seen a doctor for the foot drop problem since the application date. He stated that he saw a doctor a couple of times previously, but she told him there was nothing wrong with him. He stated that he had been using a cane for a few months, but admitted that the cane was not prescribed. He testified that his elbow was reconstructed following an injury in 1989, locks up on him, has developed arthritis, and prevents him from lifting objects without pain. He confirmed that he had not seen a doctor for elbow pain since the application date because he was discouraged after being told there was nothing wrong. The claimant

---

[36]    Rec. Doc. 7-1 at 40-65.

testified that he has had sharp pains in his neck since the removal of a cyst in 2013 but has had no treatment for his neck since applying for benefits. He stated that the neck pain prevents him from sitting for more than about an hour without lying down. When asked about his alcohol use, the claimant testified that he drank a half pint of vodka the day before the hearing and stated that he drinks once or twice per week. He stated that he uses alcohol and cannabis to deal with his pain symptoms. With regard to his daily activities, the claimant testified that he lives alone, showers and dresses himself, prepares simple meals, and spends the majority of his time sitting in the yard. He stated that he cannot lift a gallon of milk with his left arm due to elbow pain. Because he does not have a driver's license, he must walk about two blocks to the store.

After the hearing, the claimant was examined on June 30, 2016 by Dr. D.L. Kewalramani of Louisiana Physical Medicine & Rehabilitation Associates at the request of his attorney. The record was held open so that Dr. Kewalramani's report[37] could be considered. Dr. Kewalramani found that the claimant had five complaints: right foot drop, repeated cellulitis of the right leg, weakness of the left arm resulting from injury to and surgery on his left elbow, neck pain, and numbness in the upper and lower extremities.

---

[37]     Rec. Doc. 7-1 at 359-362.

The claimant told Dr. Kewalramani that he fractured his left elbow in 1989 and underwent open reduction and internal fixation surgery. He complained that his elbow locks up on him and that he has considerable weakness in his left arm, together with numbness and tingling. He reported that his left arm is painful. The claimant also told Dr. Kewalramani that he was stabbed in the right leg in 1994, which resulted in gangrene, cellulitis, and drop foot. He reported that he had debridement and treatment of cellulitis at least ten times, that his most recent hospitalization for that condition was in November 2013, and that his last episode of cellulitis was in 2015.[38] He also reported that he had numbness and weakness of his right leg and a drop foot. He said that when sitting or lying down, his right leg goes numb. He has used a local analgesic cream to treat pain in the leg without any appreciable improvement in pain or numbness. Dr. Kewalramani noted that, when walking, the claimant raised his right leg to clear the ground and tended to favor the right leg by putting all of his weight on the left leg. This reportedly resulted in tingling of the left ankle and foot. Dr. Kewalramani stated that the claimant had to "hip hike" while walking to clear the ground. Dr. Kewalramani also noted that the foot drop caused the claimant to have trouble balancing himself. The claimant told Dr. Kewalramani

---

[38]     The record contains no evidence of any treatment for cellulitis.

that he was given a brace for his right foot, that he lost the brace while he was in jail, and that he has been unable to replace it due to financial problems.

The claimant reported that, in 2012 or 2013, a large cyst was removed from his neck.  He stated that, since that time, any sudden motion of the head or neck caused discomfort and a needle sticking sensation.  He rated his neck pain at seven out of ten and explained that it is aggravated by prolonged sitting with flexion of the neck.  He reported using an airplane pillow to support his neck while sleeping.  He reported that lying down flat on his back increased his neck discomfort.  He also reported intermittent stiffness and difficulty moving his head and neck.  He claimed that the pain radiated to his left arm and stated that he had numbness and tingling in both arms, primarily on the left.  He reported prior diagnoses of diabetes and hypertension.

The claimant told Dr. Kewalramani that he formerly worked as a concrete finisher but had not worked since elbow surgery in 1989.  He reported that he smoked half a pack of cigarettes per day and drank a half pint of alcohol per day on the weekends.  He reported difficulty in going up and down the stairs in his home.

Dr. Kewalramani observed that the claimant was walking with a right hip hike to clear the ground and was favoring his right leg.  He was able to walk on his toes but was not able to stand or walk on his heel due to the right foot drop.

Dr. Kewalramani examined the claimant's neck and observed a 5 cm horizontal raised or hypertrophied scar at the T1-T2 region.  The scar was not tender but tenderness was noted at the C5-C6 spinous processes and corresponding facetal joints bilaterally.  There was mild spasm of the paraspinals with moderate spasm of the trapezeii.  An extremely tender trigger point was palpable on the left trapezius.  Cervical motion was restricted and motion against resistance increased discomfort.

Dr. Kewalramani observed a loss of normal contour of the elbow joint with prominence of the anconeus muscle.  He noted moderate tenderness of the cubital tunnel and tenderness along the triceps muscle with moderate spasm.  Motion against resistance increased discomfort of the medial side of the elbow.

Dr. Kewalramani observed two scars on the claimant's right leg:  a 15 cm surgical scar along the claimant's right shin with the lower quarter of the scar adherent to the tibia and a 20 cm lateral scar.  The distal muscles of the right leg were atrophied.  There was evidence of some depigmented spots as well as dark discolorations along the skin of the tibia anteriorly.  The claimant had full range of motion in his knee.  There was moderate tenderness along the dorsal aspect of the leg but no muscle spasm.  His pulses were normal bilaterally.

Examination revealed sensory loss to the peripheral nerve distribution of the upper and lower extremities as well as sensory loss along the right peroneal nerve

distribution.  There was no reflex at the right ankle and no plantar response on the right side.

Dr. Kewalramani's impressions were myofascial cervical region pain syndrome with clinical evidence of spondylosis, status post fracture of the left elbow probably causing left cubital tunnel syndrome, status post gangrene and cellulitis of the right leg stab wound causing drop foot, multiple episodes of right leg cellulitis, peripheral neuropathy, and right peroneal nerve palsy.

Dr. Kewalramani opined that the claimant likely developed the right drop foot due to repeated cellulitis of the right leg and ectopic ossification along the lateral side of the knee causing compression on the peroneal nerve.  He opined that the claimant is permanently disabled and unable to work in any capacity, unable to sit for more than twenty to thirty minutes at a time, unable to walk any distance due to drop foot, able to bend, and unable to kneel.

## Analysis

### A.    Standard of Review

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence.[39]  "Substantial evidence

---

[39]    *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[40]  Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[41]

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed.[42]  In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner.[43]  Conflicts in the evidence[44] and credibility assessments[45] are for the Commissioner to resolve, not the courts.  Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination:  (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3)

---

[40]    *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

[41]    *Hames v. Heckler*, 707 F.2d at 164 (citations omitted).

[42]    42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173.

[43]    *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1022.

[44]    *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985).

[45]    *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991).

the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[46]

## B.    <u>Entitlement  to  Benefits</u>

Every individual who meets certain income and resource requirements, has filed an application for benefits, and is determined to be disabled is eligible to receive Supplemental Security Income ("SSI") benefits.[47]   A person is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[48]   A claimant is disabled only if his physical or mental impairment or impairments are so severe that he is unable to not only do his previous work, but cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[49]

---

[46]    *Wren v. Sullivan*, 925 F.2d at 126.

[47]    42 U.S.C. § 1382(a)(1) & (2).

[48]    42 U.S.C. § 1382c(a)(3)(A).

[49]    42 U.S.C. § 1382c(a)(3)(B).

C.    **Evaluation Process and Burden of Proof**

The Commissioner uses a sequential five-step inquiry to determine whether a claimant is disabled.   This process requires the ALJ to determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do the kind of work he did in the past; and (5) can perform any other work.[50]

Before going from step three to step four, the Commissioner evaluates the claimant's residual functional capacity[51] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record.[52]  The claimant's residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work.[53]

The claimant bears the burden of proof on the first four steps; at the fifth step, however, the Commissioner bears the burden of showing that the claimant can

---

[50]    20 C.F.R. § 404.1520.

[51]    20 C.F.R. § 404.1520(a)(4).

[52]    20 C.F.R. § 404.1545(a)(1).

[53]    20 C.F.R. § 404.1520(e).

perform other substantial work in the national economy.[54]  This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.[55]  If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding.[56]  "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis."[57]

## D.    The ALJ's Findings and Conclusions

In this case, the ALJ determined, at step one, that the claimant has not engaged in substantial gainful activity since October 22, 2014, the application date.[58]  This finding is supported by substantial evidence in the record.

At step two, the ALJ found that the claimant has the following severe impairments:  right lower extremity calcification/exostosis with right peroneal nerve palsy/foot drop.[59]  This finding is supported by substantial evidence in the record.

---

[54]    *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016); *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).

[55]    *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

[56]    *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Fraga v. Bowen*, 810 F.2d at 1302.

[57]    *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

[58]    Rec. Doc. 7-1 at 25.

[59]    Rec. Doc. 7-1 at 25.

At step three, the ALJ found that the claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment.[60]  The claimant did not challenge this finding.

The ALJ found that the claimant has the residual functional capacity to perform "a range of light work,"[61] including lifting, carrying, pushing, or pulling twenty pounds occasionally and ten pounds frequently, standing or walking for six hours out of an eight-hour work day, sitting for six hours out of an eight-hour work day, frequently climbing ramps or stairs, balancing, stooping, kneeling, crouching, and crawling, and occasionally climbing ladders, ropes, or scaffolds.[62]  The claimant challenged this finding.

At step four, the ALJ found that the claimant had no relevant past work.[63] This finding is supported by the evidence in the record.

At step five, the ALJ found that the claimant was not disabled on or after October 22, 2014, the date of his application for SSI benefits, because there are jobs in the national economy that he can perform.[64]  The claimant challenged this finding.

---

[60]    Rec. Doc. 7-1 at 28.

[61]    Rec. Doc. 7-1 at 29.

[62]    Rec. Doc. 7-1 at 29.

[63]    Rec. Doc. 7-1 at 33.

[64]    Rec. Doc. 7-1 at 33-34.

### E.    The Allegations of Error

The claimant contends that the ALJ erred (1) in failing to adequately develop the record; (2) in failing to properly analyze and consider the post-hearing medical report; and (3) by reaching inconsistent and contradictory conclusions.

### F.    Development of the Record

The Fifth Circuit imposes a duty on the ALJ to fully and fairly develop the facts relative to a claim for benefits.[65]  The Supreme Court has described Social Security administrative proceedings are "inquisitorial rather than adversarial."[66] Accordingly, "[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits. . . ."[67]  The ALJ's obligation to develop a full and fair record rises to a special duty when an unrepresented claimant unfamiliar with the hearing procedure appears before him.[68]  This duty requires the ALJ to scrupulously and conscientiously probe into, inquire about, and explore for all relevant facts.[69]  In this case, however, the claimant was represented by legal

---

[65]    *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995); *Kane v. Heckler*, 731 F.2d 1210, 1219 (5th Cir. 1984).

[66]    *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000).

[67]    *Sims v. Apfel*, 530 U.S. at 111.

[68]    *Kane v. Heckler*, 731 F.2d at 1219 (citing *Clark v. Harris*, 638 F.2d 1347, 1351 (5th Cir. 1981)).

[69]    *Kane v. Heckler*, 731 F.2d at 1219-20; *Bowling v. Shalala*, 36 F.3d at 437.

counsel.  Therefore, the ALJ did not have a heightened duty to assure that the record was fully developed.  Furthermore, while a consultative examination may sometimes be necessary to develop a full and fair record, the decision to require such an examination is within the discretion of the ALJ. [70]

Balanced against the ALJ's duty to develop the record is the claimant's burden of proof.  At the first four steps of the sequential analysis, the claimant must shoulder the burden.[71]  In connection with his application for benefits, the claimant identified the health care providers that he had seen, and records from those providers were requested and included in the record.  Although the claimant's attorney arranged to have the claimant examined by an independent physician, Dr. Kewalramani, the claimant complained that the ALJ erred in failing to obtain a consultative examination.

A consultative examination is required for the development of a full and fair record only when the record establishes that such an examination is necessary to enable the ALJ to make the disability decision.[72]  In this case, the ALJ had sufficient facts before her to make a decision regarding the claimant's alleged disability

---

[70]     *Wren v. Sullivan*, 925 F.2d at 128; *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987).

[71]     *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018); *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Greenspan v. Shalala*, 38 F.3d at 236.

[72]     *Hardman v. Colvin*, 820 F.3d 142, 148 (5th Cir. 2016); *Jones v. Bowen*, 829 F.2d at 526.

without obtaining a consultative examination.  The ALJ noted that "there is very little medical evidence of record following the protective filing date, and what medical evidence is reflected is infrequent and conservative."[73]  The record shows that the claimant was seen at his primary care clinic a number of times in 2013, 2014, and 2015.  The treatment notes for those visits contain references to the claimant's left elbow injury and surgery, his right leg injury and surgery, and his neck surgery.  While the claimant sometimes complained of pain in his right leg, left elbow, and neck at his visits to the clinic, his complaints were not consistent, and the claimant admitted that he sought no medical treatment for his right leg, left elbow, or neck after he applied for benefits.  A failure to seek treatment may be an indication of nondisability.[74]  The record also contains evidence that the claimant failed to take the medications that were prescribed for him and failed to take advantage of referrals for specialized medical care.  This may also indicate nondisability.[75]  Therefore, the ALJ was entitled to consider those factors in determining whether the claimant is disabled.  Further, the claimant's complaints are primarily that he experienced neck, elbow, and leg pain.  Pain can be a disabling condition but only when it is constant,

---

[73]     Rec. Doc. 7-1 at 30.

[74]     *Doss v. Barnhart*, 137 Fed. App'x 689, 690 (5th Cir. 2005).  See, also, *Villa v. Sullivan*, 895 F.2d at 1024.

[75]     See *Johnson v. Sullivan*, 894 F.2d 683, 685 n. 4 (5th Cir. 1990).

unremitting, and wholly unresponsive to therapeutic treatment.[76]  Because the claimant did not consistently complain about unremitting pain at his clinic appointments, the ALJ did not err in failing to find his pain to be disabling.

Dr. Kewalramani's observations of the claimant are different from the observations of the nurse practitioners at the Teche Action Clinic.  However, Dr. Kewalramani observed the claimant walking in a particular manner on one particular day, while the claimant was observed by other health care providers to be walking with a normal gait on several other occasions.  It is clear from the treatment notes that the claimant's health care providers took his complaints seriously, prescribed appropriate medications, and made appropriate referrals to specialists.  For example, when he complained of right leg pain on December 23, 2013, his leg was examined. His scar was noted as was mild tenderness to palpation.  But his range of motion was normal, and he had normal tone, bulk, and strength in that leg.  The claimant was capable of living alone and taking care of his basic activities of daily living, including the ability to walk a couple of blocks to the store when necessary.  On July 10, 2014, he told his health care provider that his problems did not affect his normal activities.  When his primary complaint was neck pain on January 6, 2015, an examination of his neck showed no mass, a supple neck, and a full range of motion.

---

[76]     *Johnson v. Sullivan*, 894 F.2d at 686; *Harrell v. Bowen*, 862 F.2d 471, 480 (5th Cir. 1988); *Hames v. Heckler*, 707 F.2d at 166.

There was no tenderness to palpation or instability of his cervical spine. He was referred for a cervical spine x-ray, but the record contains no indication that he followed up on that referral. Dr. Kewalramani's observations and opinions regarding the claimant's impairments cannot be reconciled with the information set forth in the contemporaneous notes of his treating health care providers. But that inconsistency is not due a failure of the ALJ to properly develop the record. This allegation of error lacks merit.

## G.   **Analysis of the Post-Hearing Medical Report**

The claimant complained that the ALJ incorrectly characterized Dr. Kewalramani's report as based solely on the claimant's subjective complaints and devoid of objective clinical findings. That, however, is not what the ALJ concluded. To the contrary, the ALJ found that the claimant has a severe impairment in the form of right lower extremity calcification/exostosis with right peroneal nerve palsy/foot drop, based almost entirely on Dr. Kewalramani's observation and examination of the claimant. The ALJ referred extensively to Dr. Kewalramani's report in her decision, and she credited all of the objective results that he obtained when he examined the claimant. What the ALJ found to be non-medically determinable impairments were the claimant's reported elbow pain, osteoarthrosis, polysubstance dependence, cellulitis/gangrene of the right leg, and peripheral neuropathy. That conclusion was based on the fact that there were no objective tests supporting those

claimed impairments but only the claimant's subjective comments regarding those
conditions.  The ALJ's conclusion is supported by substantial evidence in the record.

For example, Dr. Kewalramani stated that the claimant's elbow fracture
"probably" caused cubital tunnel syndrome.  But no objective testing was performed
to confirm that the claimant actually had cubital tunnel syndrome.  Instead, Dr.
Kewalramani relied solely on the claimant's report of pain, i.e., moderate tenderness
of the cubital tunnel.  Similarly, there is no evidence in the record that the claimant
actually ever had gangrene or cellulitis other than his own statements in that regard.
Although the claimant told Dr. Kewalramani about treatment for cellulitis in 2013
and 2015, the record contains no evidence of any such treatment.  Additionally, there
are no toxicology screens or other objective evidence in the record corroborating the
claimant's statements that he drinks alcohol and smokes marijuana.  The same
conclusion was properly drawn by the ALJ with regard to the claimant's complaints
of numbness and tingling, i.e., peripheral neuropathy, in his extremities.  Although
Dr. Kewalramani observed some sensory loss in the peripheral nerve distribution of
the upper and lower extremities, this loss was not quantified nor did the physician
explain how his conclusion in that regard was reached.  There is no indication that
any diagnostic studies were performed to substantiate the alleged nerve damage,
only that Dr. Kewalramani related the claimant's complaints of tingling and

numbness to a diagnosis of peripheral neuropathy.  Therefore, the only evidence

supporting this condition were the claimant's own reports.

In the absence of clinical or laboratory diagnostic testing results, the ALJ was

correct in finding that these conditions – elbow pain, osteoarthrosis, polysubstance

dependence, cellulitis/gangrene of the right leg, and peripheral neuropathy – were

not medically determinable.  Therefore, this allegation of error lacks merit.

## H.    Inconsistent and Contradictory Conclusions

Finally, the claimant asserted that the ALJ reached inconsistent and

contradictory conclusions that mandate remand of this matter.  This allegation of

error is based on the ALJ having accorded significant weight to the opinions of the

non-examining state agency physician Dr. Gurcharan Singh and little weight to the

opinions of Dr. Kewalramani.  The claimant objected because Dr. Singh did not have

the entire record before him for review and was primarily evaluating complaint

regarding gastrointestinal disorders rather than the elbow and right leg conditions

that the claimant emphasized in his briefing.

The ALJ found was that Dr. Kewalramani's opinions regarding the claimant's

ability to work were entitled to little weight because they were conclusory, not

supported by medical evidence, and infringed upon the issues reserved to the

Commissioner.  This was a proper conclusion because Dr. Kewalramani did not

explain the objective bases for his conclusion that the claimant was "unable to work

in any capacity"[77] or his opinion that the claimant is unable to sit for more than twenty to thirty minutes at a time.  It was also a proper conclusion because a physician's statement that a claimant is disabled or unable to work is not a medical opinion entitled to deference but a legal conclusion that is reserved to the Commissioner.[78]  For those reasons, the ALJ gave Dr. Kewalramani's opinion that the claimant was disabled little weight in evaluating the claimant's residual functional capacity.

The ALJ gave Dr. Singh's opinion that the claimant could perform light work significant weight in evaluating the claimant's residual functional capacity because it was consistent with the diagnostic and clinical findings in the record.  The ALJ did not give Dr. Singh's opinions governing weight or controlling weight. She simply compared them to other evidence in the record and found them to be consistent.  This was a sound decision based on substantial evidence.  Despite the claimant's contention to the contrary, the assignment of weight to the doctors' opinions had nothing to do with the identification of certain impairments as severe; instead, it was a pair of conclusions related solely to the claimant's residual functional capacity.  Therefore, this allegation of error lacks merit.

---

[77]    Rec. Doc. 7-1 at 362.

[78]    *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (per curiam); see also 20 C.F.R. §§ 404.1527(d)(1), 404.1527(d)(3), 416.927(d)(1), 416.927(d)(3).

## Conclusion and Recommendation

IT IS THE RECOMMENDATION of this Court that the decision of the Commissioner be AFFIRMED and this matter be dismissed with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 28th day of September 2018.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE